## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————————

MYKAL HALL,                                    :
                                               :
                    Petitioner,                :          Civ. No. 15-4416 (FLW)
                                               :
          v.                                   :
                                               :
UNITED STATES OF AMERICA,                      :          **OPINION**
                                               :
                    Respondent.                :
—————————————————————————          :

## FREDA L. WOLFSON, U.S.D.J.

## I.       INTRODUCTION

Petitioner, Mykal Hall ("Hall" or "Petitioner"), is a federal prisoner proceeding *pro se*

with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  For the

following reasons, Hall's § 2255 motion is denied.

## II.      BACKGROUND AND PLEADINGS

### A.  The Underlying Criminal Proceeding

Hall was arrested on July 8, 2013, on a criminal complaint charging him with one count

of assaulting a person having custody of United States property, with intent to rob, in violation of

18 U.S.C. § 2114.  *See United States v. Hall*, Crim. No. 13-684 (FLW) (D.N.J.), Compl., ECF

No. 1.  The Complaint alleged that, between February and May of 2013, Hall sold to a

confidential source seven firearms, including two sawed-off shotguns, one of which had a

defaced serial number.  *Id.*, Attach. A, ¶ 1.  It alleged that Hall and the confidential source agreed

to meet on June 8, 2013 for another firearms sale and that Hall showed the confidential source a

handgun before stating that he had to go get a bag containing other guns.  *Id.* ¶¶ 3–4.  The

Complaint alleged that Hall returned, accompanied by another person, ultimately determined to

be codefendant Lachtavo R. Nance ("Nance"), that Hall placed a bag in the trunk of the confidential source's vehicle, and that Nance then robbed the confidential source of the purchase money at gunpoint.[1]  *Id.* ¶¶ 5–6.

A grand jury returned a two-count indictment on October 17, 2013, charging Hall and Nance, in Count One, with assault with intent to rob property of the United States in violation of 18 U.S.C. §§ 2 and 2114 and, in Count Two, with use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 9 24(c)(1)(a)(ii).  Crim. No. 13-684, ECF No. 12. The grand jury subsequently returned a superseding, three-count indictment, which added a charge of engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 2 and 922(a)(1)(A).  *Id.*, ECF No. 18.  In May 2014, this Court dismissed without prejudice the assault charge against Hall based on a violation of the Speedy Trial Act.  *Id.*, ECF Nos. 34– 36.  One week later, a grand jury returned a second superseding indictment, with nine counts against Hall,[2] for dealing firearms without a license under 18 U.S.C. §§ 2 and 922(a)(1)(A) (Count One), two counts of possession of an unregistered short-barreled shotgun under 18 U.S.C. § 2 and 26 U.S.C. §§ 5841, 5861(d), and 5871 (Counts Two and Four), two counts of delivery of an unregistered short-barreled shotgun under 18 U.S.C. § 2 and 26 U.S.C. §§ 5841, 5861(j), and 5871 (Counts Three and Six), possession of a firearm with a defaced serial number under 18 U.S.C. § 2 and 26 U.S.C. §§ 5842, 5861(h), and 5871 (Count Five), conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951 (Count Seven), and, as in the first superseding indictment, assault with intent to rob property of the United States under 18 U.S.C. §§ 2 and 2114 and

---

[1]  The bag placed in the trunk apparently contained only bricks.

[2]  Prior to the second superseding indictment, the charges against Nance had been resolved by a plea agreement.  *See* Crim. No. 13-684, ECF Nos. 21–23 & 37.

possession of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(a)(ii) (Counts Eight and Nine). *Id.*, ECF No. 38.

On June 18, 2014, Hall pleaded guilty before this Court to Count Four of the Second Superseding Indictment, for possession of an unregistered, short-barreled shotgun.[3] *Id.*, ECF Nos. 42–44, 49. As part of the plea agreement, Hall waived his right to file an appeal, collateral attack, or challenge to a sentence within the range set forth by the United States Sentencing Guidelines for an offense level of 29. *Id.*, ECF No. 44 ¶¶ 12–13. On November 24, 2014, this Court sentenced Hall to 108 months of imprisonment, to be followed by three years of supervised release. Crim. No. 13-684, ECF Nos. 47–48, 56.

## B. The § 2255 Motion

On June 25, 2015, Hall, acting *pro se*, filed a § 2255 motion to vacate, set aside, or correct his sentence. (ECF No. 1.) The Court administratively terminated the petition as Hall's motion was not submitted on the proper form, as required by Local Civil Rule 81.2(a). (Order (July 8, 2015), ECF No. 2.) Hall shortly thereafter filed a new § 2255 motion, which asserts three grounds for relief, which are all based on a theory of ineffective assistance of counsel. (*See* ECF Nos. 3 & 3-1.) Hall contends that his counsel misinformed him regarding the potential for sentencing enhancements, allegedly leading Hall to believe he would receive a prison sentence of no more than 36 months if he accepted the plea deal, and Hall asserts that he would have gone to trial but for this advice. (Mem. of Points & Authorities, ECF No. 3-1, at 20–22.) Hall also alleges that his attorney was ineffective by failing to object to the government's use of "sentencing factor manipulation," by failing to argue that Hall's sentence was substantively

---

[3] The details of Hall's plea hearing are further discussed in the Court's analysis of his habeas claims, *infra*.

unreasonable, and by failing to object to a sentence based on insufficiently established facts. (*Id.* at 23–26.)

On April 7, 2016, Hall filed a "Motion to Amend and Supplement the Record," in which he seeks to add a claim that his sentencing enhancements violated the Supreme Court's holding in *Johnson v. Untied States*, 135 S. Ct. 2551 (2015). (ECF No. 7.) In October 2017, Hall filed another motion seeking to amend his petition by alleging that his counsel provided ineffective assistance by failing to challenge the sentence under *Rosemond v. United States*, 572 U.S. 65 (2014). (ECF No. 10.)

The government filed an Answer opposing Hall's § 2255 motion, which included an affidavit from the attorney who represented Hall during the plea and sentencing stage, Scott Krasny ("Krasny"), as well as copies of correspondence between Krasny and Hall. (ECF Nos. 11 through 11-3.)

## III.    ANALYSIS

### A.  Legal Standards

To grant relief on a federal prisoner's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte,* 865 F.2d at 62).

The bulk of Hall's arguments are framed as claims for ineffective assistance of trial counsel. (*See* ECF Nos. 3-1 & 10.) The Sixth Amendment guarantees defendants effective assistance of counsel during critical portions of a criminal proceeding. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). The Supreme Court, in *Strickland v. Washington,* 466 U.S. 668 (1984), articulated a two-prong burden for demonstrating the ineffectiveness of counsel: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness and (2) that the petitioner suffered prejudice as a result. *Id.* at 687–96; *see also Preston v. Superintendent Graterford SCI*, ___ F.3d ___, 2018 WL 4212055, at *9, *12 (3d Cir. Sept. 5, 2018); *Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than entirely thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a manner that was deficient is measured by

a standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove resulting prejudice. *See* 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011) (internal quotation marks and citation omitted).

In the context of plea agreements, this prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012); *United States v. Jesus-Nunez*, 576 F. App'x 103, 105 (3d Cir. 2014). In considering whether the prejudice prong has been satisfied, the Court must consider the strength of the underlying evidence. *See Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010).

The *Strickland* Court made clear that a court may apply the two prongs in whatever order it sees fit. 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see also Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir. 2010).

## B.  Alleged Misadvice as to Likely Sentence

As outlined above, Hall first asserts that his counsel misled him into believing that if he accepted the plea deal he would likely receive a maximum sentence of 36 months of imprisonment, thus causing him to accept a plea at issue. (*See* ECF No. 3-1 at 21, 24.)  Hall contends that, "but for petitioner's trial counsel's misadvice which led to the inducement of his entering a plea of guilty, the petitioner would definitely have gone to trial."  (*Id.* at 22.)

Hall's assertions that he only accepted the plea agreement because his counsel misled him as to the duration of his sentence resulting from the plea deal are not supported by the evidence in the record.  The government submits an affidavit from Krasny, in which prior counsel indicates that, when the government first offered a plea deal whereby Hall would plead guilty to possession of an unregistered, short-barreled shotgun, Krasny informed Hall that the plea contained a stipulation to a Sentencing Guidelines offense level of 31, which produced a sentencing range of 108 to 135 months without enhancements for criminal history.  (Krasny Aff., ECF No. 11-1 ¶¶ 18–19.)  Krasny also includes a copy of a letter he sent Hall at that time, which explained that the offered plea deal included an agreement that Hall's adjusted offense level would be 31 and that "[t]hat would produce a guideline sentence between 108 to 135 months in criminal history category I and a higher guideline sentence if [Hall] had any criminal history." (Krasny Aff., Ex. A, Letter from Scott A. Krasny to Mykal Hall (Apr. 1, 2014), ECF No. 11-2, at A-14 to A-15.)  Krasny's letter also informed Hall that the statutory maximum sentence for the

offense would be ten years, and that the sentence would thus not exceed that duration. (*Id.*) Krasny attests that Hall rejected the plea deal at that time. (ECF No. 11-1 ¶ 19.)

Krasny further recounts that, on June 2, 2014, after the Second Superseding Indictment, he went to the jail where Hall was detained and presented the government's second plea offer to Hall, explaining the sentencing guidelines at an offense level of 29. (ECF No. 11-1 ¶¶ 28–29.) Krasny explains that, while going over this proposal with Hall, he "performed calculation example [sic] using the maximum of the guideline range and explained the prison exposure to Hall"; Krasny includes a copy of his handwritten sentencing calculations. (*Id.* ¶ 29; ECF No. 11-2 at A-5.) Krasny states that he again met with Hall a few days later and that, when Hall asked about the shortest possible sentence he could receive, Krasny calculated that 87 months would be the low end of the guidelines sentence. (ECF No. 11-1 ¶ 30.) Krasny also includes a copy of handwritten calculations based on that hypothetical. (ECF No. 11-2 at A-4.) Krasny indicates that Hall decided to accept the plea deal and signed the plea agreement immediately following this discussion. (ECF No. 11-1 ¶ 30.) *See also* Crim. No. 13-684, ECF No. 44 (plea agreement signed by Hall, dated June 2, 2014). Hall did not file any reply brief or otherwise dispute Krasny's representations.

During the June 18, 2014 plea hearing before this Court, Hall indicated that he had read the plea agreement, discussed it with Krasny, and fully understood its terms. Crim. No. 13-684, Tr. of Plea Hr'g (June 18, 2014), ECF No. 49, at 7–9. Hall indicated that he entered into the plea agreement of his own free will because he was guilty. *Id.* at 9. Hall specifically indicated that he understood that he waived his right to appeal any sentence that fell within or below the Sentencing Guidelines range for offense level 29. *Id.* at 10–11. The Court explained to Hall the penalties resulting from the charge to which he was pleading, including a prison sentence of up

to 10 years, and Hall confirmed his understanding in that regard. *Id.* at 13–14. The Court then explained the function and discretionary nature of the Sentencing Guidelines, and Hall again confirmed his understanding. *Id.* at 14–17. Hall specifically remarked that he understood that he would "not be able to withdraw [his] plea on the ground that anyone's prediction as to the Guideline range proved to be inaccurate" and that "the sentence imposed may be different from any estimate [his] attorney may have given [him]." *Id.* at 16–17. Hall further admitted committing the elements of the charge to which he was pleading and admitted to the underlying facts of the firearms sales. *Id.* at 20–23. Following these concessions, Hall entered a plea of guilty to the charge, and the Court found that his plea was knowing and voluntary. *Id.* at 23–24.

Krasny explains that, following the plea hearing, Hall sent Krasny a letter indicating his belief that the Court would impose a sentence of between 84 and 109 months of imprisonment and asking whether the probation office could recommend a lighter sentence; Krasny includes a copy of this letter. (ECF No. 11-1 ¶¶ 31–32; Krasny Aff., Ex. A, Letter from Mykal Hall to Scott Krasny (July 7, 2014), ECF No. 11-2 at A-38.) In response, Krasny sent a letter to Hall explaining that, at offense level 29, Hall would face a sentence of 87 to 108 months and opining that it was unlikely the probation office would recommend a lower sentence; Krasny has also included a copy of this letter. (ECF No. 11-1 ¶ 33; Krasny Aff., Ex. A, Letter from Scott A. Krasny to Mykal Hall (July 16, 2014), ECF No. 11-2 at A-3.)

During Hall's sentencing on November 24, 2014, this Court noted that it would follow the parties' stipulation as to a two-point offense-level enhancement because the underlying transactions involved three to eight guns, rather than the Presentencing Report's recommendation of a four-point enhancement due to the transaction involving eight guns. Crim. No. 13-684, Tr. of Sentence (Nov. 24, 2014), ECF No. 56, at 4. The Court, considering the circumstances, found

that Hall's adjusted offense level was 29, the same level stipulated to by the parties in the plea agreement. *Id.* at 6–7. The Court determined that Hall had a criminal history level of 3 and that, in conjunction with the offense level of 29, the Guideline range was 108 to 135 months, limited by the 120-month maximum sentence under the applicable statute. *Id.* at 7–8. Considering all applicable circumstances, the Court sentenced Hall to 108 months of imprisonment. *Id.* at 15–20.

The above-recounted circumstances clearly rebut Hall's assertions that the representation by Hall's trial counsel was deficient or that such deficiency caused Hall any prejudice. Even if one of Hall's attorneys[4] at some point, prior to the plea hearing, suggested to Hall that he could only receive a 36-month prison sentence as part of a plea deal, it is clear that, by the time Hall accepted the plea agreement, he had a full and accurate understanding of his sentencing guidelines, and in that regard, the range of potential sentences. (*See* ECF No. 11-2, at A-4 to A-5, A-14 to A-15.) *See also* Crim. No. 13-684, ECF No. 44; Crim. No. 13-684, ECF No. 49 at 7–17. Indeed, Hall stated under oath, in open court, that he had discussed the plea agreement with Krasny and understood its terms, that he was accepting the plea deal of his own free will, that he understood that he was stipulating to a Guidelines offense level of 29, that he knew the maximum prison sentence was 10 years, and that he understood that his attorney's representations as to a likely sentence might not result. Crim. No. 13-684, ECF No. 49 at 7–17.

Furthermore, Hall's representations that he "definitely" would have chosen to proceed to trial, rather than accept the plea deal, had his counsel provided accurate advice are simply not credible. The "victim" to whom Hall repeatedly sold firearms, and who was ultimately robbed,

---

[4] Hall was initially represented in the criminal proceeding by Joshua L. Markowitz ("Markowitz"). After the return of the first superseding indictment, and at Hall's request, the representation by Markowitz was terminated, and Hall was assigned Krasny to represent him. *See* Crim. No. 13-684, ECF Nos. 24, 26–27.

was a confidential source, and thus, these interactions were captured on audio and video recordings.  *See* Crim. No. 13-684, ECF No. 1, Attach. A.  By the time Hall accepted his plea, he had been indicted by a grand jury on nine charges relating to firearm possession, firearm dealing, assault, and conspiracy to commit robbery, crimes with maximum sentences ranging from five to 20 years, as well as brandishing a firearm in connection with a felony, under which a minimum seven-year sentence would have been added that would run consecutive to any other sentence. *See* Crim. No. 13-684, ECF No. 38.  I do not find convincing Hall's argument that had he properly understood that the plea deal would likely result in a prison sentence of nine years, he would instead have chosen to go to trial on a nine-count indictment.  Indeed, in the face of mounting evidence from a confidential source and audio-video recordings of the crimes, at a trial, Hall would almost certainly face a substantially longer sentence.  Under these circumstances, Hall has not met his burden of demonstrating prejudice from any alleged ineffective assistance of counsel.  *See United States v. Babalola*, 248 F. App'x 409, 414 (3d Cir. 2007) ("In light of the overwhelming evidence of her guilt and the lenity of the government's plea offer, it is highly unlikely that Babalola would have risked a trial which, the evidence shows in any event almost certainly would have resulted in a conviction and imprisonment.  Babalola has thus failed to demonstrate that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." (internal quotation marks and citation omitted)); *see also Garcia v. United States*, Civ. A. No. 12-3020, 2014 WL 4352307, at *5 (D.N.J. Sept. 2, 2014); *Gudiel-Soto v. United States*, 761 F. Supp. 2d 234, 241 (D.N.J. 2011).

In any event, the Third Circuit has also held "that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted."  *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (citing *United States v.*

*Jones*, 336 F.3d 245, 254 (3d Cir. 2003)). "[D]efense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Id.* As Hall fails to meet his burden of showing either the deficiency or the prejudice prong related to his acceptance of the plea, relief on Ground One is denied.

## C. Alleged Failure to Object to "Sentencing Factor Manipulation"

Hall's second ground for relief concerns his counsel's alleged failure to object to "sentencing factor manipulation" by the government. (*See* ECF No. 3-1 at 23–24.) Hall argues that his attorney "allowed the government, and the trial court to grossly enlarge the scope of him [sic] crime for which he was being charged, and used the multiple charges as leverage to extract, or secure an [sic] longer sentence on the back-end at the sentencing phase by applying 16-levels of enhancements." (*Id.* at 23.)

"Sentencing factor manipulation" is the term applied by courts in some circuits "when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible." *See United States v. Sed*, 601 F.3d 224, 229, 231 (3d Cir. 2010). The Third Circuit has consistently declined to address the question of whether a theory of sentencing factor manipulation may be asserted within this Circuit. *Id.* at 229–30; *see also United States v. Washington*, 869 F.3d 193, 210 (3d Cir. 2017); *United States v. Whitfield*, 649 F. App'x 192, 199 (3d Cir. 2016).

Applying the highly deferential examination required by *Strickland*, the Court finds that Hall fails to meet his burden of showing that his counsel was deficient by failing to raise a legal theory that has not been recognized as the law within this Circuit and which, where applicable, is

primarily applied in drug cases. *See Sed*, 601 F.3d at 229, 231. Furthermore, Hall does not demonstrate any resulting prejudice, as he cannot show a reasonable probability that the outcome would have been different had his counsel raised a sentencing-factor-manipulation argument. *See Strickland*, 466 U.S at 694. Even if this Court were to entertain the theory of sentencing factor manipulation, there is no indication that this theory would have applied to reduce Hall's sentence. Here, it appears that Hall maintains that the government manipulated his sentencing factors by intentionally engaging in additional gun transactions, and thereby, increasing the number of guns involved. That argument does not hold water, however, because the Presentencing Report indicated that the underlying transactions had involved eight guns, yet the government agreed to stipulate that the underlying transactions involved "three to eight" guns. *See Washington*, 869 F.3d at 210–11 ("[E]ven assuming some impropriety here on the part of the government, most of the factors it created for the crime, and which were within its unique control, were not the drivers of Washington's actual sentence."). Indeed, because of the government's stipulation, Hall was subject to a lesser sentence based on three to eight guns rather than a longer one based on eight guns. *See* Crim. No. 13-684, ECF No. 56, at 3–4. This does not evince a scheme by the government to unduly inflate Hall's sentence.

Additionally, in considering sentencing-factor-manipulation arguments, the Third Circuit has advised that "it does not offend due process for the police to 'persist in ascertaining what quantity [of drugs a defendant is] willing and able to deal.'" *Sed*, 601 F.3d at 231 (quoting *United States v. Shephard*, 4 F.3d 647, 649 (8th Cir. 1993) (alterations in original)). This logic appears applicable in the government's attempts to continue buying guns from Hall. The Third Circuit additionally citing approvingly that "'the ultimate seizure of a larger quantity of illegal drugs from a suspect in connection with the arrest has positive societal consequences; eradicating

illegal drugs from society is a legitimate, if not the primary, goal of drug enforcement officials.'" *Id.* (quoting *United States v. Lacey*, 86 F.3d 956, 965 (10th Cir. 1996)).  This reasoning appears to apply even more forcefully to the government's efforts to remove dangerous and unregistered firearms from the streets.  Having considered these issues, the Court finds that Hall has not sustained his burden of demonstrating that relief is warranted on the basis of his attorney's failure to present arguments as to sentencing factor manipulation, and relief on this ground is denied.[5]

### D.  Alleged Failure to Argue Substantive Unreasonableness of Sentence

In his third ground for relief, Hall argues that his counsel was deficient by failing to argue that the sentence imposed was substantively unreasonable.  (ECF No. 3-1 at 25–26.)  In this ground, Hall argues that his counsel "failed to subject the prosecution to any meaningful adversarial testing during the plea bargaining process" and that counsel "allowed the court to sentence petitioner based on judicially found facts."  (*Id.*)  Hall contends that his "sentence is

---

[5]  The Court notes that sentencing factor manipulation has sometimes been considered in conjunction with arguments that a conviction is the product of outrageous government conduct, under *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978).  *See Washington*, 869 F.3d at 209–10.  In *Twigg*, the Third Circuit concluded that a scheme to manufacture methamphetamine was substantially engineered by the government, as an informant supplied all chemicals, glassware, and space used, and as the defendant was essentially subordinate to the informant.  *Twigg*, 588 F.2d at 375–76, 380–81.  The *Twigg* Court found this governmental conduct outrageous and consequently reversed the defendant's conviction.  *Id.* at 380–81.

Hall has not explicitly raised a *Twigg* outrageous-conduct argument.  Nonetheless, the Court observes that, even if he had, such argument would necessarily fail.  As the Third Circuit has recently observed, there is only one reported Court of Appeals decision besides *Twigg* that has found circumstances justifying the vacatur of a conviction based on outrageous government conduct.  *Washington*, 869 F.3d at 209; *see also Greene v. United States*, 454 F.2d 783 (9th Cir. 1971).  Furthermore, the evidentiary burden placed on a defendant asserting a *Twigg* claim is "'exceedingly great.'"  *Washington*, 869 F.3d at 210 (quoting *United States v. Dennis*, 826 F.3d 683, 694 (3d Cir. 2016)).  Hall's allegations do not come close to show any outrageous conduct by the government in this case.

substantively unreasonable, and must be set-aside under the totality-of-the-circumstances standard." (*Id.* at 26.)

Hall's allegations in support of this ground for relief are scattershot and conclusory. Rule 2 of the Rules Governing § 2255 Proceedings requires that the motion "state the facts supporting each ground [for relief]." *See* Rules Governing § 2255 Proceedings, Rule 2(b)(2), 28 U.S.C.A. foll. § 2255. A § 2255 motion cannot rest upon vague and conclusory allegations, and such allegations "may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (citing *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988)). It is impossible to discern from the petition what facts form the basis for this claim, in what way Hall alleges that his counsel's representation was deficient, or how such deficiency allegedly resulted in prejudice. (*See* ECF No. 3-1 at 25–26.)

Furthermore, while a representation may be found deficient where an attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing," *United States v. Cronic*, 466 U.S. 648, 659 (1984), there is no suggestion that Krasny, who successfully filed a motion to dismiss a charge under the Speedy Trial Act and who actively negotiated a plea deal on Hall's behalf, could be found to have essentially abdicated his duties, *see* Crim. No. 13-684, ECF Nos. 28, 32, 43–44. The transcript of the sentencing also makes clear that Krasny actively argued on Hall's behalf for a lower sentence. *See* Crim. No. 13-684, ECF No. 56 at 3–5, 9–11.)

Hall also argues under ground three that his counsel was deficient by "allow[ing] the court to sentence petitioner based on judicially found facts which led to petitioner receiving a sentences [sic] that was many more time [sic] longer than those the Guidelines otherwise would have recommended." (ECF No. 3-1 at 26.) Hall relatedly argues, "Any fact that increases the

penalty to which a defendant is exposed constitutes an element of a crime, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and must be found by a jury, not a judge." (*Id.*)

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Third Circuit has just reaffirmed, however, that "*Apprendi* does not apply when a district court makes factual findings that affect the advisory guidelines but not the statutory maximum." *United States v. Gonzalez*, ___ F.3d ___, 2018 WL 4265966, at *27 (3d Cir. Sept. 7, 2018); *see also United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014); *United States v. Grier*, 475 F.3d 556, 565 (3d Cir. 2007). This is the exact circumstances surrounding Hall's sentence: his plea to the possession of short-barreled shotgun subjected him to a prison sentence of up to ten years, *see* 26 U.S.C. § 5871, and the factual circumstances of the offense (to which Hall stipulated as part of his plea agreement) were not applied to increase the range of legally permissible sentence, but were merely assessed as part of the advisory guidelines to aid the Court in its discretionary sentencing decision, *see* Crim. No. 13-684, ECF No. 56 a 6–8. Accordingly, relief on the ground that Hall's counsel failed to object to alleged sentencing errors is denied.

### E. Alleged *Johnson* Claim

After the Court had screened Hall's Petition, but before the government had filed its Answer, Hall filed a submission seeking to amend his Petition by adding a claim pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 7.) Hall argues that, in light of the holding in *Johnson*, it was improper for the Court to enhance his Sentencing Guidelines offense level based on facts included in Schedule A of the plea agreement and to impose a sentence based on that calculation. (*Id.*)

Even assuming that this amendment is permissible, this claim fails, as Hall has not adequately raised a *Johnson* claim. In *Johnson*, the Supreme Court held that enhancing a criminal defendant's sentence under the Armed Career Criminal Act upon a finding that the defendant had committed three prior violent felonies would violate due process if the finding relied upon the Act's so-called residual clause, which included within the definition of a violent felony, any felony that "involves conduct that presents a serious potential risk of physical injury to another." *See Johnson*, 135 S. Ct. at 2555–63. Specifically, the *Johnson* Court found the residual clause to be unconstitutionally vague because it "leaves grave uncertainty about how to estimate the risk posed by a crime" and because it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." (*Id.* at 2557–58.) Subsequently, in *Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886 (2017), the Supreme Court found that a similar residual clause in the Sentencing Guidelines was not susceptible to a vagueness challenge, as the Guidelines "do not fix the permissible range of sentences," but instead "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 892–95.

Hall's challenge bears almost no similarities to the facts or legal issues considered in *Johnson* and its progeny. Hall does not raise a challenge based on the residual clause of the Armed Career Criminal Act nor on similar language contained in any other statute. He does not make an argument that any statutory provision is unconstitutionally vague. Indeed, Hall's arguments in support of this claim solely concern enhancements under the Sentencing Guidelines based on the circumstances of the offense being punished, not enhancements based on any prior convictions. (*See* ECF No. 7.) Thus, it is clear that Hall does not present a *Johnson* claim. Instead, Hall's arguments concerning sentencing enhancements based on the factual

circumstances of the offense seem more closely related to the *Apprendi* line of cases. The Court has already considered and rejected these arguments under controlling precedent. Accordingly, relief is denied on the arguments asserted in Hall's first attempt to amend his petition.

### F. Alleged *Rosemond* Claim

After his first motion to amend, but before the government had filed its answer, Hall filed a second motion to amend his petition. (ECF No. 10.) In this amendment, Pierce argues, as an extension of his ineffective-assistance claim, that counsel was ineffective under the Supreme Court's holding in *Rosemond v. United States*, 572 U.S. 65 (2014), by permitting a plea agreement that stipulated to a sentencing guidelines enhancement for Hall's use of a firearm in connection with a felony and by failing to object to the Court's imposition of a sentencing enhancement on this basis. (Mem. of Law in Supp., ECF No. 10, at ECF pp. 8–16.) Hall reasons that, under *Rosemond*, he "could not be subjected to such an enhancement under the guidelines unless the government had met its burden of showing that petitioner *Hall* had advance knowledge that his alleged codefendant would possesse [sic] a firearm during the felony offense." (*Id.* at ECF pp. 8–9 (internal quotation marks omitted).) Hall concludes that his sentence should not have been enhanced by the possession of a weapon by his codefendant, Nance, as evidence did not establish that Hall "had advance knowledge of the gun." (*Id.* at ECF p. 9.)

As with Hall's first attempt to amend his petition, even assuming that his proposed amendment is permissible, it must fail on the merits. In *Rosemond*, the Supreme Court considered the government's burden of proof when prosecuting a defendant for aiding and abetting the use of a firearm in connection with a drug-trafficking or violent crime, in violation of 18 U.S.C. § 924(c). *See Rosemond*, 572 U.S. at 67–83. The Court reviewed the aiding and

abetting statute, 18 U.S.C. § 2, in connection with § 924(c) and concluded that a conviction for aiding and abetting a § 924(c) violation requires a showing that the defendant had advance knowledge of a confederate's intent to use a gun in the predicate crime. *Id.* at 70–81. The Court further explained that aiding or abetting liability depended on the defendant having knowledge of the confederate's intent to use a gun far enough in advance that the defendant could still choose to abandon the scheme. *See id.* at 78.

The only commonality that this case has with *Rosemond* is the fact that Hall was indicted for a violation of § 924(c).[6] *See* Crim. No. 13-684, ECF Nos. 12, 18, & 38. The § 924(c) charge against Hall was dropped as part of his plea deal, and he was thus neither convicted nor sentenced under 18 U.S.C. § 2 or § 924(c). *See* Crim. No. 13-684, ECF Nos. 44 & 56. Accordingly, at no point did the Court make a finding whether Hall could be found liable for aiding and abetting a § 924(c) violation. Hall's extensive arguments regarding the holding in *Rosemond* are not a basis for granting him habeas relief. Rather, Hall's contentions seem to present a continuation of his *Apprendi*-based argument that his counsel was ineffective for failing to challenge allegedly improper sentencing enhancements. The Court has already rejected this argument for the reasons discussed above. Hall's invocation of *Rosemond* does not change this analysis; Krasny's representation was not deficient based on his failure to raise arguments under *Rosemond*, which were inapplicable to the circumstances here. *See, e.g.*, *Barrera v. United States*, Civ. A. No. M-14-503, 2017 WL 4326090, at *2 (S.D. Tex. Mar. 6,

---

[6] While every count (except for a conspiracy charge)in the indictments against Hall and his codefendant Nance included citations to 18 U.S.C. § 2, there is no indication of whether each defendant would be charged as a principal or accomplice. *See* Crim. No. 13-684, ECF Nos. 12, 18, & 38. As the Supreme Court has noted, however, 18 U.S.C. § 2 "'abolishe[d] the distinction between principals and accessories and [made] them all principals." *Standefer v. United States*, 447 U.S. 10, 18 (1980) (alterations in original) (quoting *Hammer v. United States*, 271 U.S. 620, 628 (1926)).

2017) ("There is no authority to support Movant's position that *Rosemond* applies to his sentence or conviction.  . . . .  In sum, *Rosemond* is in applicable to Movant's case and provides no basis for collateral relief under § 2255.")  Furthermore, Hall cannot show any likelihood of a different outcome had Krasny raised these inapplicable arguments during sentencing.  Accordingly, relief on this ground is denied.

## IV.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a litigant may not appeal a final order in a § 2255 proceeding unless the judge or a circuit justice issues a certificate of appealability ("COA").  That section further directs courts to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* 28 U.S.C. § 2255(d).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).  In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Hall has failed to make a substantial showing of the denial of a constitutional right.

## V.     CONCLUSION

For the foregoing reasons, Hall's § 2255 motion is denied on the merits.  Although courts considering § 2255 motions are generally directed to hold evidentiary hearings, it is apparent from the arguments before the Court and the record of the underlying criminal proceeding that, regardless of the evidence adduced at such a proceeding, Hall would not be entitled to any relief based on his motion.  *See Booth,* 432 F.3d at 545.  An appropriate order will be entered.


DATED:  September 21, 2018                          /s/  Freda L. Wolfson
                                                    FREDA L. WOLFSON
                                                    United States District Judge